IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAMUEL LEWIS,            *
        Plaintiff,

                           *

     v.                     CIVIL ACTION NO.  PJM-08-2167

                           *

WARDEN, et al.,
        Defendants.        *

******

**<u>MEMORANDUM OPINION</u>**

Defendants Plowden and Fuhrrmaneck[1] have moved for dismissal or summary judgment against Plaintiff Samuel Lewis.  Paper Nos. 42 and 57.  Plaintiff has responded.  Paper No. 59.  No hearing is necessary to resolve the issues before the Court.  *See* Local Rule 105.6 (D. Md. 2010).  For the reasons stated below, the dispositive motions filed by Defendants, treated as motions for summary judgment, will be granted.

**Standard of Review**

**A.**     **Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the  Plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).   The dismissal for failure to state a claim upon which relief may be granted does not require Defendants to establish "beyond doubt" that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007).  Once a claim has been stated adequately, it may be supported by

---

[1] Defendant Joseph Furrmaneck is a licensed clinical professional counselor.   Defendant Keith Plowden is a nurse practitioner.  Warden Hill and  Captain Donovan were  previously dismissed from this case .  Plaintiff's claims regarding failure to protect, access to courts, and loss of property have been adjudicated and are not at issue here. Paper Nos. 30 and 31.

showing any set of facts consistent with the allegations in the complaint. *Id*. at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## B.     Motion for Summary Judgment

Fed. R. Civ. P. 56(c) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

*Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Background

Plaintiff alleges that during his incarceration at the Maryland Transitional Center ("MTC") he was denied adequate psychiatric care. Plaintiff states that despite submission of numerous sick call slips, attempting suicide, cutting himself, and advising staff of his mental health problems; Defendants Plowden and Fuhrmaneck denied him adequate psychiatric care. Paper Nos. 1, 3, 4 and 7.

Records before the Court demonstrate that Plaintiff entered at the Maryland Reception Diagnostic Classification Center (MRDCC) on April 9, 2008. He was transferred to the Maryland Transition Center (MTC) on April 29, 2008, and later transferred to the Central Laundry Facility (CLF).[2] Paper No. 18, Ex. 1.

During Plaintiff's five months at MTC, he was seen initially by the Psychology Department at MTC for a baseline interview on June 11, 2008. *Id*., Ex. 2, Paper No. 57, Ex. 1. Plaintiff, who has a history of self harm, was advised to return for psychological services on an "as needed" basis. Paper No. 57, Ex. 1.

---

[2] Plaintiff stayed for approximately three weeks before transfer to the Maryland Correctional Training Center (MCTC) on October 23, 2008. *Id*.

Plaintiff submitted sick call slips requested psychiatry consults on July 24, 25, and 28, 2008. Paper No. 24, Attachments. Plaintiff was seen by Licensed Clinical Social Worker (LCSW) Bruce D. Kirby on July 31 2008; Kirby also saw Plaintiff on September 11, 2008. Paper No. 57, Ex. 1. On July 31, 2008, Plaintiff reported that his psychotropic medication ran out.[3] Kirby noted that Plaintiff was not at immediate risk for self-harm but wanted to see psychiatry personnel. Kirby wrote the referral. *Id.* Plaintiff's psychotropic medications were reordered on August 2, 2008. Paper No. 24, Attachment.

Plaintiff was referred to psychiatry for assessment and his appointment was scheduled for August 15, 2008. Paper No. 18, Ex. 2. Plaintiff did not appear for his evaluation.[4] He was rescheduled for an evaluation on August 28, 2008; however, for unspecified reasons, that appointment had to be rescheduled. *Id.*

On September 11, 2008, Plaintiff reported he was receiving Depakote for bi-polar disorder but that the medication was not working. He advised Kirby that he "still [had] racing thoughts, and [woke] up in the middle of the night." *Id.* Kirby assessed that Plaintiff was not in imminent risk for self harm and requested follow-up with psychiatry. Plaintiff indicated he wanted to talk about issues with psychology personnel, so Kirby made referrals to both the psychology and psychiatry departments. *Id.*

Plaintiff was seen by psychiatry on September 22, 2008, by S. Weiland, a psychiatric nurse practitioner. This evaluation occurred several days after Plaintiff was taken to Bon

---

[3] Records provided by Plaintiff indicate that as of July 21, 2008, he was taking Depokote and Wellbutrin daily and felt the medications were not working. Paper No. 24, Attachment, SOAP Note Summary July 21, 2008.

[4] Plaintiff states that he was on segregation at this time and could not go to the psychiatry department; rather, medical personnel would need to see him in his cell. Paper No. 59.

Secours Hospital's emergency room after falsely alleging he had swallowed metal. Progress notes from the emergency room indicate that Plaintiff falsely reported swallowing a razor blade in order to be seen and "no continuation of care" was required. The emergency room admission occurred on September 19, 2008. Paper No. 57, Ex. 1. Weiland prescribed psychotropic medication for Plaintiff to be continued until October 22, 2008. Paper No. 18, Ex. 2 p. 62-63; see also Paper No. 57, Ex. 1.

On September 24, 2008, Fuhrmaneck, who serves as administrative supervisor of the Psychology Department at MTC, sent an email to Warden Hill regarding Plaintiff's contact with MTC's mental health staff. Paper No. 57, Ex. 1. On September 29, 2008, Plaintiff was seen for crisis intervention and was placed on close observation status. Paper No. 57, Ex. 1. G. Pagnotta, Psychology Associate II, wrote the progress not which indicated that although Plaintiff denied suicidal or homicidal ideation, he would intermittently threaten to harm himself if moved into a cell with another inmate. *Id.* It was noted that while Plaintiff's threats of self-harm appeared to be manipulative in order to secure housing, it was decided that he would remain single celled pending an evaluation by psychology and custody personnel. Pagnotta further noted that Plaintiff's self-injurious behavior was goal-directed and controlled and could evidence a chronic inappropriate pattern developed in order to meet his needs and control his environment. *Id.*

Plaintiff was seen by Fuhrmaneck on September 30, 2008, while under close observation in the medical unit. Paper No. 57, Ex. 1. Plaintiff was also seen by C. Rhodes, M.A., an intern, on October 1, 2008, as well as by Debbie Moore-Daly, R.N.,. *Id.* Plaintiff reported that he cut himself with a razor to release anger and send a message to the psychiatry department. He denied suicidal or homicidal ideation and also denied visual or auditory hallucination. Moore-

5

Daily noted that Plaintiff was self-ambulatory and had superficially cut the word "help" on his upper left arm.  He also had superficial cuts on his feet.  The affected areas were cleansed and treated with bacitracin and steristrips and Plaintiff was placed in a safe cell on close observation.  He had a restful night and ate breakfast the following morning.  Moore-Daily notified the psychology department of the incident and Plaintiff was escorted to the medical department by a correctional officer to see a psychiatric nurse practitioner. *Id*., Ex. 1 and 3.   He was scheduled for a follow-up appointment with Rhodes on October 13, 2008; however, Plaintiff was transferred to CLF on October 3, 2008.  *Id*., Ex., 1, 2 & 5.

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of  its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

There is no essential distinction between the right to medical care for physical ailment and the right to psychiatric or psychological care for mental ailments.  *See Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977).  Plaintiff, as an incarcerated person, "is entitled to psychological or psychiatric  treatment if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the

prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.*, at 47– 48. The *Bowring* court further concluded that the right to such treatment is based upon the essential test of medical necessity and not upon a belief is that care is merely desirable. *Id.* at 48. "Disagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The records before the court demonstrate that Plaintiff was seen regularly by mental health staff. Paper No. 57, Ex. 1. He was seen on at least six separate occasions by mental health staff during his five-month incarceration at MTC. Four of the six contacts occurred in September, 2008, in response to Plaintiff's needs and requests. Plaintiff's treatment focused on medication management as well as crisis intervention and supportive counseling as needed. *Id.* He has, over the course of his incarceration, threatened self-harm numerous times. Psychiatry notes indicate that some of his behaviors appear to be attention seeking, malingering, and designed for secondary gains. *Id.* Plaintiff has been provided medication to treat his mental health problems. He has also been provided regular contact with mental health professionals. *Id.* Plaintiff disagrees with the judgment of his psychiatric health care providers in that he believes that his health care providers should have more closely monitored his medication levels by having monthly blood draws and providing talk therapy. Paper No. 24. Such disagreement with a course of treatment does not provide the framework for a federal civil rights complaint but rather, at most, states a claim of negligence. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975).

7

**Conclusion**

In light of the foregoing, Defendants Plowden and Fuhrmaneck's Motions for Summary Judgment shall be granted. A separate order follows.


July 22, 2010

_____/s/_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE
